DORMAN et, Plaintiffs, v. KINCADE, Treasurer, et, Defendants.

Common Pleas Court, Athens County.

No. 22461.   Decided May 8, 1961.

344

*Mr. Wm. Parker Walker*, for H. C. Dorman.

*Mr. Homer B. Gall, Jr.*, prosecuting attorney, for T. O. Kincade, Treas. of Athens County.

*Mr. Wm. O. Rowland* and *Messrs. Squire, Sanders & Dempsey*, for the City of Athens.

MITCHELL, J., of Jackson County, sitting by assignment in Athens County.

MITCHELL, J. The above entitled case is one of a series of cases filed in equity in Athens County, Ohio, all on about the same date and all of which raise, with some variations, the question of the validity of a special assessment levied by the City of Athens against certain property owners owning property in what is known as Sanitary Sewer District Number One in said city. The instant case being the first of this series of cases coming to trial, the Court feels that a more comprehensive opinion is necessary than for perhaps some of the subsequent cases, should the same come to trial, as many of the same issues are embodied in those cases.

For a better understanding of the specific issues raised in this case, it will be helpful to review the history of the somewhat unusual sewer improvement involved in this case. The City of Athens, as with many Southern Ohio cities, has been constructed upon hilly terrain. Part of the city is almost flat, but many areas have been built on steep grades. At the north end of the city there is a hill several hundred feet in height. This hill is called Peach Ridge or Ridge Park Subdivision. Before World War Number Two, this hill was not a part of the corporation and there were but very few residences thereon. This hill commands a magnificient view of a valley and river and, with the improvement of building techniques following World War Number Two, the area became desirable for building sites for better homes. Most of the homes in the area of this sewer district are in approximately the $15,000 to $30,000 class. The area of the hill where plaintiffs' property is located was annexed to the City of Athens September 1951. Subsequently housing developments and individual homes were constructed on this hill. The greater number of these homes were constructed in the beginning, starting at the lower slopes and

working up the hill. The present plaintiff, Mr. Dorman, is one of the pioneers of the area, his home having been constructed in 1946 and at the very crest of the hill. Some of his land is in acreage and some of it has been divided into lots of varying widths. Some of his lots are those mentioned in the petition. All of the land included in all of the cases filed in this Court is situated within Sanitary Sewer District Number One. Prior to the construction of the sewer, the plaintiff had installed a septic tank to take care of his sewage.

In December of 1956, the City of Athens passed a resolution determining it necessary to construct a sanitary sewer for District Number One. The city retained the engineering firm of Burgess and Niple of Columbus, Ohio, to plan and construct the sewer. The construction engineer, Mr. Hatch, of this firm did not testify in the instant case, but has testified in the case of *Klingenberg* v. *The City of Athens et al.*, which was tried immediately following the present case and which contained the same basic issues. According to the engineer in charge, his company, also, submitted to the city the method by which the sewer assessments were to be made. This method, with some minor variations, was adopted by the city. (I will discuss the method of assessment more in detail in a moment.) Mr. Hatch, the engineer, further revealed that the actual construction involved many difficult problems not present in ordinary sewer construction. It seems that from the apex' of the hill, the natural drainage of water goes in four different directions, making it impossible to construct one main sewer trunk with various laterals. Therefore, the hill which was called Sanitary Sewer District Number One was sub-divided into four drainage areas in accordance with the direction of the water flow in each area. It was necessary to construct a main sewer trunk line for each drainage area. This fact, plus the steep terrain involved, greatly increased the construction costs.

On February 18th, 1957, the city passed the ordinance determining to proceed with the construction of the sanitary sewer in Sewer District Number One. The city, in accordance with its original resolution, determined to issue notes in anticipation of issuing bonds which, in turn, was in anticipation of the collection of the sewer assessments to be later levied. The sewer assessments were made against the lots in the four separate drainage areas. These lots did not bear the expense of the entire

project, but merely the expense of the project in each particular drainage area. The engineer explained that the reason for this is that certain drainage areas were more difficult to construct and, therefore, more expensive and that it was felt that only the owners of lands serviced by each drainage area should bear the cost for that area.

The plaintiff in this case received notice of the assessment on June 1st, 1959. He filed objections to the same before the Equalization Board of the city. The objections, in essence, stated that the assessment exceeded the benefits received by the plaintiff and was, therefore, illegal. On August 25, 1959, the Equalization Board reviewed the assessment of plaintiff's lots and reduced the same in the aggregate amount of $35.97, despite the testimony of Mr. Morrison, one of the members of the Equalization Board, who stated he knew of no change. Apparently, when this one assessment was reduced, the amount of the reduction was distributed and added to the assessments of the remaining owners in that drainage area so that the total of all the assessments would still equal the cost of the project. The revised estimates were certified to the County Auditor for collection on September 8th, 1960. The attempt to collect the same was made when the tax books opened in 1961. The plaintiff's petition was filed March 22nd, 1961, praying that the assessment be enjoined. The petition set forth three grounds on which plaintiff relies for the illegality of the special assessment as follows:

No. 1—The assessment as set forth exceeds the special benefits conferred upon the property.

No. 2—The assessment as set forth is in excess of 33-1/3% of the actual value of the property after the improvement is made.

No. 3—That there has been no uniform plan under which the various lots and parcels of land in said Sanitary Sewer District Number One have been assessed; the division is arbitrary and not in compliance with the requirements that the property be assessed in equal manner in proportion to the benefits which result to such lots and lands; that the assessing authority has totally failed to take into consideration the physical and legal restrictions which exist in relation to certain of

the lands and lots above described which prevent or prohibit the erection of any dwellings or buildings which would use the facilities of the sanitary sewers upon certain of said lots and lands.

The defendant County Auditor filed a general denial by way of answer to the petition. The City of Athens received permission to interplead as a party-defendant and filed an answer admitting certain allegations of the petition, but denying specifically that the plaintiff had exhausted all of his legal remedies and denied plaintiff had no legal remedy and stated, further, that plaintiff had failed to appeal to this Court from the decision of the Equalization Board, and further generally denied the remaining allegations of the petition.

It is not necessary to discuss at length in this opinion the special defense raised by the defendant of the alleged failure of the plaintiff to appeal from the decision of the Equalization Board to the Common Pleas Court by virtue of Section 2506.01, Revised Code, as this Court has previously overruled a motion of the defendants on the same grounds to dismiss the petition, the Court previously indicating that this statutory remedy was not exclusive and did not deprive the Common Pleas Court of its original jurisdiction in equity. (See 106 Ohio St., 415). It might be noted in passing, that had such an appeal been made, the issues before this Court would be the same as those raised by this action.

First as to Ground No. 3 as set forth in the petition. The latter part of this ground is somewhat similar to Grounds No. 1 and No. 2 and will be considered in conjunction with these grounds. Plaintiff alleges further in the first sentence of Ground No. 3, however, that the assessment is void because of the lack of uniformity in the assessment. He states that instead of having one sewer district and four separate drainage areas that there should be four separate sewer districts, the argument being that the assessment of four different areas cannot be accomplished within one district. Section 727.03, Revised Code, while providing that a district must be established, certainly does not expressly prohibit the sub-dividing of such district. Plaintiff's objection actually is as to form rather than substance, as it would seem to make no difference what

the areas were called if, in fact, the assessment was uniform and on an equal basis according to benefits received by the land assessed. In fact, in the instant case, the objection of the plaintiff would be more valid if there were not separate drainage areas. The engineer explained that four separate sewer systems were necessary on this hill and that some were more expensive to construct than others. If the hill had been but one district then the property owner on one side of the hill would have to pay his share of the whole cost, even if the sewer which serviced his area was cheaper to construct. It seems to this Court to be fair and equitable to ask the users of the sewer in each area to pay on a uniform plan for only the cost of the sewer in their particular area, without assuming part of the cost of a sewer that they don't even use. Unquestionably, the sewer assessments against all of plaintiff's lots are high in amount. This is unfortunate, but necessary because of construction difficulties, but so long as the assessments are on an equal and uniform basis, they will be upheld provided they come within the restrictions hereinafter referred to.

As to Grounds No. 1 and No. 2. It would serve no useful purpose for this Court to review the assessment law of Ohio as set forth in the briefs and cases cited. Suffice it to say, however, that for some years the decisions on this subject were somewhat in conflict, especially on assessments which were based on the front footage method. There was, also, an indication in one series of cases that if the assessed property were benefited to any extent then the Court would not intervene, even if the assessment apparently was in excess of such benefits. (*Rogers* v. *Johnson*, 21 Ohio App., 292; *Baxter* v. *Van Houter*, 115 Ohio St., 288.)

This theory, however, ignores the provisions of Sections 727.01, .03, .04 and .15, Revised Code, and later cases reject this theory. The most recent opinions on the duty of the Court in these special assessment cases are: *Lackey, Appellant,* v. *Hilty, Appellees,* Court of Appeals, Lucas County, 1951; *Cristo, Appellant,* v. *City of Niles,* Ohio Supreme Court case decided November 18th, 1959; and *Henry et al., Appellants,* v. *Banns et al., Board of Commissioners Greene County, Appellees,* decided by Court of Appeals for Greene County on April 4th,

1959. Also, see *In re Joint County Ditch*, 122 Ohio St., 235; and *State, ex rel. Shafer* et al., v. *Otter, County Surveyor*, 106 Ohio St., 415.

In the case *"In re Joint County Ditch"* decided in 1930, an appeal was taken from the ruling of the Board of Commissioners and the case was, by statute, heard de novo in the Common Pleas Court. The Supreme Court stated that in such a situation it was mandatory upon the Court to hear the case anew and decide specifically if the land of each appellant was benefited to the amount of the assessment and that it was not sufficient for the Court to merely make a finding that the lots were somewhat benefited. If the Court had such an obligation on an appeal de novo, it certainly would be no less an obligation where, as in this case, the question is being raised by an independent action in equity. In *Laskey* v. *Hilty*, the Court, after reviewing the cases on this subject of special assessments, concluded that the rule of law set out by the Supreme Court is as follows:

"When a special assessment is materially in excess of the benefits conferred by an improvement, no advantage accrues to the owner and the assessment loses its justification and violates Section 19, Article 1 of the Constitution. In such cases the owner has the same right to seek relief in equity as he has in cases of no benefit or where the assessment exceeds the value of his property."

The Supreme Court, in a per curiam decision in *Cristo* v. *Niles, supra*, states as follows:

"It is only where there is an abuse of discretion, that is, where the assessment exceeds the benefits contrary to Section 727.15, Revised Code, or where the assessment is in excess of 33-1/3% of the actual value of the land after the improvement is made, that a Court of equity may intervene to enjoin the assessment."

The Court in the instant case is governed by the foregoing rules.

First, as to lots numbered 6, 7, 8 and 9. The plaintiff's house, drive and garage are on these lots. There is no question but that lots numbered 8 and 9 are benefited in the amount of the assessment inasmuch as this is the primary location of the

home. However, because of the grade, lots numbered 6 and 7 must be utilized in the future as a drive as they are now being used. They have no independent value and the improvement has no effect upon their value. Their only value is their utilization as an access to plaintiff's home and, therefore, the assessment definitely outweighs any benefits accruing to these lots by the improvement. Also, it might be pointed out that the assessments on these lots is more than one-third of their value after the improvement. The assessments on lots numbered 6 and 7 must be set aside completely.

Lots numbered 3111 through 3118 are excellent building sites, although in all probability, more than one lot would be needed in order to build a home suitable to the area, most lots being either sixty feet in width or even somewhat less. The Court feels that lots numbered 3111 through 3116 were benefited at least in an amount equal to or in excess of the assessment. In this regard it might be pointed out that benefits to the land are not necessarily limited to the dollar increase in values, but matters of potential use, saleability and other factors may have a bearing on whether such land is benefited, at least to the amount of the assessment. While lots numbered 3117 and 3118 are excellent building sites, it would be necessary to utilize both lots for a home which would be in a price class which would justify the value or purchase price of these lots. The Court feels that the assessment of $1,834.68 is in excess of the benefits received. Therefore, the Court reduces the special assessment on each lot from $917.34 to $717.34.

As to lots numbered 3104 and 3105. These lots have a possible, but not probable use as building lots. From the street they are relatively level for, as one witness testified, about forty feet, then the lots run up a perpendicular cliff. Since the level area is not large enough for a home and lawn, the cliff would have to be utilized for this purpose, entailing a great expense. Since the view from this particular spot is not such as to make the lots attractive for that purpose, there being better sites available with a much better view, there would be a very limited market for these lots, which would greatly reduce their value. This was so testified to by the real estate broker, Mr. Cohen. It would definitely be necessary to have both these lots in an

attempt to build anything upon them. The present assessment on both of these lots is $1,467.74. This assessment is far in excess of 1/3 of the value of the lots after the improvement by all the evidence. By no stretch of the imagination would these lots be benefited more than $500.00 each, or a total of $1,000.00 for the site. Therefore the assessment on each lot is reduced from $733.87 to $500.00.

An entry may be prepared accordingly.